Good morning, Your Honor. If it pleases you, my name is William Kiang. Now this case is an immigration judge denied a motion to reopen an in absentia order because the petitioner failed to appear. All this happened in 2012 and in the motion, the previous attorney was Joe Spence. He quickly filed a motion to reopen through another attorney, Mr. Markman, and the case was that the motion to open was denied. However, the respondent did not know any of these things. The attorney Spence told him you don't need to appear in court because there's a motion to change venue to Seattle. So when the judge gave an in absentia order, nobody told him about it and instead, the attorney Spence's motion to open was denied. On August 13, 2012, just one day before the hearing, attorney Spence received notice in Los Angeles from the immigration judge in San Diego. The motion to change venue was denied. So his office manager, Kirk Liu, quickly hired attorney Markman in San Diego, a local attorney, to appear in court for him and also told Markman that petitioner would not be appearing. Markman reminded him that no show would get an in absentia order. So attorney Spence also gave a letter signed by him to Markman to show the immigration judge that he was sick with cancer and also he had tried to contact the petitioner. Also, can I ask you, so all these facts you're talking about, was this provided to the BIA or an IJ in an affidavit? Because I think that's what Lozado requires, right? And I think that's what a big issue in this case is. Yes. It seemed to have provided an affidavit. Because the respondent at the petitioner filed appeal to the BIA and supported it with his motion, with his affidavit. Just that it was not notarized. So that makes it not an affidavit, right? I mean, I think the BIA actually in its order sending it back to the IJ, so kind of giving him a second bite at the apple, but does actually drop a footnote and say, yeah, but this isn't an affidavit. It cites one of our cases, Robbins, I think. That's correct, Your Honor. However, all this happened before the remand from the BIA. Yeah, but why doesn't, on the remand, why doesn't your client then take the BIA's hint and actually just go get the thing notarized and refile it as an affidavit in front of the IJ? Yes, the BIA was very generous. They remanded the case for additional arguments in the abundance of caution and for the sake of justice. However, the petitioner was waiting and waiting for the court to set a hearing date, master calendar hearing, which usually takes place. And the judge would set a date for the merits hearing, set a date for filing of additional evidence. But the immigration judge did not do that. The immigration judge simply certified the case back to the BIA and told the BIA the board has no authority to remand the case. Well, counsel, when you say that this is what they usually do, I mean, is there really a usual circumstance? I mean, I'm not an expert on this immigration stuff, but my understanding is that this was a little bit unusual. The IJ certainly thought, based on the IJ's decision when it got sent back to the IJ, certainly thought this was kind of unusual, right? So I don't know that I don't know that there's like a usual circumstance for this where somebody says, hey, it tells the BIA, I want to enter this additional evidence, which I don't think the BIA had to allow. But the BIA sent it back and said, you know, you can present this original additional evidence to the IJ. So I don't know that the IJ there's not like a is there a normal circumstance for that? Your Honor, the additional evidence submitted to the BIA was the was the email message from the third attorney. Mr. Markman is already in the file in the record and the IJ can seal it. However, in my practice of immigration law for 30 years, when a case got remanded from the BIA, the judge always said the first case, first hearing is master calendar. So isn't the problem, this is a bit, I agree with you. I've been doing this for the BIA would have, in order to get additional evidence, the BIA would have to reopen. He can't just send not the BIA can't just not can not deny a motion to reopen and remand at the same time. And that is what the IJ says for a couple of paragraphs. It's like he says this places the court in a quandary. The court does not understand how the BIA could have construed this new evidence as a motion to remand and so remand it to the court. And he goes on and on. So, so he did. He didn't perceive this to be a reopening. So he wouldn't, if it wasn't reopened, he couldn't bring in new evidence. It had to be reopened in order for him to set a hearing. All right, if the BIA didn't made an error on this point, after the immigration judge certify the case back to the BIA, then the BIA should find enough reason to reopen the case and then remand it. Because in his first remand order, you know, already for the red attorney Markman's statements, saying It's very, it's so it's very confusing to me because IJ says, therefore, the court talking about himself, seeks guidance as to under what authority the BIA has remanded this case. And if the case has been reopened, how it should proceed. And if it has not been reopened, how it can proceed having already found that the respondent's case is not merit reopening. So that's that explains why the typical hearing and and process whereby you would be able to submit additional evidence did not take place. All right, your honor, in that I'm asking, I mean, is that your understanding? Because this is that it was supported by case law of the Ninth Circuit, you the BIA has to reopen first before they remand. But my to be clear to reopen, they have they've said this is what we want. If we if you know Lazado, right, they say this is what it takes to reopen. And they had never even to this day, I don't think your client hasn't actually provided an affidavit to the BIA. So I guess that's the thing. I understand this is all the regular and and it seems like everybody was confused. But at the end of the day, doesn't your at the end of the day, are we going to pin all that on the BIA and the IJ? Are we going to say that BIA and IJ were within their rights to deny the motion to reopen based on the fact that he had never filed an affidavit? Step one of step one of Lazado. It seems that's the clearest thing in this case. Your Honor, if the attorney's ineffective assistance of counsel was clear and obvious on the record, then you don't even need to file a Lazado claim. But in this case, the respondent, the petitioner did file a Lazado claim. Have you have you presented an ineffective assistance on the are you saying ineffective assistance in not filing a proper affidavit? Or are you saying that the defendant did not file an affidavit in the first place? Okay. That's right. Because the attorney, the previous attorney, Mr. Spence, concealed the fact that the respondent had an in absentia deportation order. Counsel, how can it be clear on that record if the record isn't even the whole point of having an affidavit is have a sworn affidavit under penalty of perjury that that tells the evidence to the court. And so if you don't have that, then how can it be clear? I don't I'm not sure. Is there any cases that you can say it can be clear on the record when you don't even have an affidavit? Your Honor, we have a very good third party testimony by Mr. Markman, attorney Markman. We submitted his email message to the board and the board was convinced there is reason to remand. Mr. Markman said the attorney Spence did tell the petitioner you don't need to appear in court when there's a motion to change venue. And that was absolutely wrong. You have to appear in court before the change of venue was granted. So one day after one day before the hearing on August 13th, the judge denied the Mr. Spence did receive the denial of the motion to change venue. So he quickly tried to contact the that's why he said I tried to but it means he didn't get him because the petition was already in Seattle. And the judge issued an in absentia order. And there's a lot of serious charge like forgery of the petitioner's name on his affidavit for the motion to reopen. And also the Mr. Spence concealed the in to the petitioner for two full years before petitioner found out about it and quickly filed a motion to reopen on his own with Mr. Markman's statement of support. The board defined is convincing enough to remand the case. But so I'm asking the honorable court here is to remand the case to the BIA. If they think fit, they should first reopen the case and then remand like the immigration judge had pointed out. Mr. Kang, when when your client filed the what he thought was an affidavit, was he represented by counsel at that time? Or was he operating pro se? Pro se, your honor. So is there any authority to waive the Robbins requirement for notarization for pro se litigant? I don't know. I'm not sure your honor. But the facts of this case is the respond at the petitioner. I'm sorry to saying the respondent because that that's what they call in court, immigration court. Is that with all this evidence in the file with Mr. Markman's third party, he's a disinterested party. So what he says carry some weight, corroborating the petitioner's claim that the previous attorney had cheated him, had had not been honest with him. And his statement to the to the to the board, even though his claim is affidavit, it was not notarized. But however, he was submitted under the penalty of perjury. So it should carry some weight. And as the as your honor has pointed out, he was not represented by counsel at that time. So there's we have a case, Correa Rivera, that says the Lozada requirements are not rigidly applied, especially when the record shows a clear and obvious case of ineffective assistance. And it is here. And they go on to determine whether the attorney's ineffectiveness was sufficiently obvious from the record. So as to Lozada entirely, much less the requirement of a notary. Is that what you're referring to? Yes, thank you very much. Okay. You're over your time. Let's hear from the government. And perhaps the government can start by addressing that issue. That is a very good question. Judge, I'm giving them a moment to to unmute their video, but we seem to have lost contact with Ms. Brady. I have asked them to start their video several times and we have called and left a message with them. We have no email from them letting us know that there was an issue. We we have them connected to the call still. Now she's unmuted. There's there they are. There you are. Okay. I apologize. No, no. Did you hear the question I was asking? No. Under our case law. Okay, Correa Rivera, that excuses the Lozada strict adherence to the Lozada requirements in certain circumstances. It's in certain circumstances, but we submit that those circumstances aren't present here. Because ineffective assistance was not clear from the face of the record. The effective assistance would have been against Attorney Joel Spence. But the only thing we have facts we have about Mr. Spence is that he wrote the court immigration court when he couldn't attend the hearing on August 14 2012. And that would not be ineffective assistance. It was an unfortunate circumstance. But petitioner never established that Mr. Spence committed ineffective assistance. And that was one of the problems. That's what I'm referring to is that in Correa Rivera, we held that. And that's the case I was reading from we held that if the record includes a complaint to the bar, then that alone is sufficient. There wasn't a requirement of notarization, much less for a pro. The caveat in Correa Rivera was that if they had questions about the affidavit to the bar, they could pose those questions. And that's exactly what they did here. They weren't satisfied that he had actually filed the complaint with the bar. He never he submitted a couple of that so called affidavits. But he never swore under oath that he had filed and the complaint with the California bar. So did he ever have the chance to swear that under oath? Was there ever a hearing on this? No, but he had through the immigration judge's decisions, he was put on notice that that was a deficiency in his case. And the issue of a hearing, we agree. But the immigration judge didn't hold a hearing because of the particular circumstance of this case where the BIA didn't make clear that they were reopening. I take your point, Your Honor. But nonetheless, though, petitioner showed at least two instances that he understood how to get information or evidence before the agency. He did that when he filed his pro se motion to reopen in November 2014. And then again, when he submitted evidence to the board, which he said, proved that Mr. Spence had committed ineffective assistance. So the confusion about the remand was that the remand that expressly it was to give petitioner an opportunity to present additional evidence or arguments, and he did not do so. So he had the opportunity. Wait, was he given a, did the IJ give him an opportunity to come in and testify, or to submit additional evidence? Not insofar as the IJ called him into a hearing, but the IJ waited for almost a year after the remand before ruling on the motion to reopen. And we submit that that would have been petitioner's opportunity to submit any evidence or argument. If the IJ was going to take additional evidence, he needs to set a time and date for a hearing at which to have the additional evidence, right? Can't just sit around and have a case under submission or not. I mean, I mean, how does anyone know that when they can, that they have the opportunity and the time and place for submitting additional evidence? Nothing prevented them from requesting a hearing before the IJ. And that is perhaps one of the deficiencies. And again, recognizing that he appeared to be appearing pro se at that point. But I would take the issue of... Make sure I understand. I mean, we're talking about the, this thing bounced back and forth, right? So it went to the IJ, then went to BIA, BIA remanded it, then went back to BIA. But we were talking here about the failure to actually say that he'd filed. He said some stuff, but he didn't say that he'd filed. And as I read it here, in the IJ's very first decision, that was the basis, or one of the bases of the IJ's first assent. Respondent has failed to establish that a complaint against Attorney Spence has actually been filed. So he was on notice as soon as he got that on the way up to BIA. So he had, you know, he should have actually corrected. Again, he should have just corrected that with the material he presented to the BIA. Or I think what you're saying is he could have corrected it when the BIA sent it back. So I think that he knew about it all the way since the very first hearing. And we submit that that's one of the deficiencies in Patricia's case. He knew about that, and he knew about them saying that he hadn't shown exactly what, in effect, the assistance Mr. Spence had provided, but he didn't respond to those things. And I take your honor's point on an earlier question about whether or not it was in hand. The affidavit as such that was filed was in English. Petitioner made it clear he does not read or speak English. But so how could he attest to any facts in a document, if he doesn't read or speak the language? He could have provided an affidavit in Mandarin, and had it translated and translation certified. He did not do that. And that would have been his way of presenting sworn evidence for the agency. And that's one of the deficiencies here. He didn't have a sworn testimony. What I think is maybe the best argument by Mr. Kang on behalf of his client here is that he has to have the LAZADA requirements go away to prevail in this case. And his argument is, you know, we've got some cases that say you don't always have to, that there are exceptions. And his argument is that when it's clear on the face of the record. But what I'm saying is, if you have an affidavit, how is that probative evidence of the things that are in the affidavit? So I think his argument was, well, Mr. Marksman's testimony, or Attorney Marksman's testimony alone, if I'm getting his name right, is enough. I think he has to be right about that. What is your position on whether Mr. Marksman's testimony alone is enough to make it clear on the face of the record that there was ineffective assistance at counsel? Mr. Marksman never presented any testimony. Petitioner filed an email, which he claimed Mr. Marksman wrote. But that was not Mr. Marksman submitting any testimony. And Mr. Marksman never did. And that's one of the other problems. If he's claiming that Mr. Marksman was decision, then he should have filed an ineffective assistance claim against Mr. Marksman. But he didn't. And there's no evidence as such against Mr. Marksman in this case. Did I answer the question? Yeah, I think so. Your point then is that you don't think that that is evidence at all because Mr. Marksman should have filed some sort of affidavit or something. It's not good enough just to have an email from Mr. Marksman and file it? That's exactly right. Particularly where the IJ found that one of the assertions by Mr. Marksman in the email really sort of obviated it as any evidence at all. Because in the email, Mr. Marksman said he had never met when in fact he had appeared with Petitioner in July 2014 and entered a plea on behalf of Petitioner. So the IJ just discounted the so-called evidence from Mr. Marksman. And to this day, we do not have any evidence from Mr. Marksman in this case. But isn't this a circular argument because Petitioner is also saying that he never had a chance to get a hearing in front of the IJ and present any evidence? I take your point. And our response to that is that he knew how to get information before the IJ, even just to request for a hearing. And he did not do so. He never responded once the case had been remanded when he could have made just the kind of record you're referring to. But I think this case highlights two points. One is that the agency can  put forward by the party, including their request for certain procedures. The second is that Petitioner had a very steep burden in terms of getting reopening, since the presumption is that hearings will not, cases will not be reopened. And those are the two hurdles we submit that he hasn't overcome in this case. Was there another question I can answer? The other was that in order to get in the first place, Petitioner had to show exceptional circumstances that something beyond his control prevented him from attending the hearing in August 2012. He never presented anything showing it was beyond his control. He presented conflicting information about whether Mr. Spence had, in fact, himself told Petitioner not to attend that hearing. That is not showing that something was beyond his control and that he therefore could not attend the hearing. And we submit that the board's remand was an effort to give Petitioner every chance to make his case. And as they said, they did so out of an abundance of caution and the interest of justice to give Petitioner an additional opportunity to present evidence and show that he complied with the law. Did I hear a question? Sorry. For these reasons, we submit that the petition for review should be denied. Thank you. Thank you, counsel. Mr. Kang, I'll give you a minute. All right. Thank you very much, Your Honor. Petitioner was fully prepared to have an evidentiary hearing before the judge, maybe to call in those adverse witnesses, Mr. Spence, and his manager, Kirk Liu, because of the serious charge of fraud. But that hearing was never held. And Petitioner also was preparing to submit evidence that the State Bar has received the complaint. In fact, the State Bar returned with a code number and a postcard showing that received. But he never had an opportunity to submit it to the judge because there was no hearing set. And so that's all. Thank you very much, Your Honor. All right. Thank you very much, counsel. Lee v. Barr will be submitted.
judges: Wardlaw, Choe-Groves, Vandyke